UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DOROTHY CHAPPELL-JOHNSON, )  |  |
| ) |  |
| Plaintiff, ) |  |
| ) |  |
| v. ) | Civil Action No. 06-1074 (RCL) |
| MARTIN GRUENBERG, ) |  |
| Chairman, Federal Deposit ) |  |
| Insurance Corporation, ) |  |
| ) |  |
| Defendant. ) |  |
| ) |  |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiff Dorothy Chappell-Johnson sued her employer, the Federal Deposit Insurance

Corporation (FDIC), alleging that, because of her gender, age and in reprisal for prior EEO

activity, she was denied promotion to a Human Resources Specialist position for which she was

the most qualified candidate, having performed the duties of the position for more than six years

in earlier assignments with the FDIC and having been determined to be the only candidate

qualified and eligible to fill the position at all three potential grade levels.

In its pending motion for summary judgment, the FDIC asserts that it is entitled to

summary judgment because it selected the best available candidate and that in absence of direct

evidence of discrimination the Court may not critically examine this assertion.  Defendant also

contends that Chappell-Johnson cannot establish a *prima facie* case of retaliation claiming that

the selecting official, Lorinda Potucek, did not know of her protected activity.  However, as

demonstrated below, there is evidence from which a jury could conclude that Ms. Potucek's

claim that she did not know about Ms. Chappell-Johnson's protected activity is a lie intended to cover up discrimination and/or retaliation. In addition, the approving official was involved in the mediation of two of Ms. Chappell-Johnson's earlier complaints. Moreover, the approving official's involvement in Chappell-Johnson's earlier, ongoing EEO cases occurred within months of the non-selection at issue in this case, raising an inference of causation.

Defendant also asserts that Chappell-Johnson cannot establish pretext (defendant concedes that the *prima facie* case has been made) for gender and age discrimination, alleging the selection was based upon a legitimate nondiscriminatory reason - that defendant selected the best candidate. However, Chappell-Johnson's evidence that the selecting official lied in her deposition is sufficient to establish pretext. In addition, there are issues of fact about irregularities in the selection/approval processes that would allow a reasonable jury to reject defendant's claims that the younger male selected for the position was more qualified than Ms. Chappell-Johnson. Finally, the lack of supporting documents for the selection/approval processes also casts doubt on the legitimacy of the process and the veracity of the results. For these reasons, defendant's motion must be denied.

## STATEMENT OF FACTS

### I.    Ms. Chappell-Johnson's Career at FDIC.

Ms. Chappell-Johnson is a 62-year old female. She has been employed at the FDIC or the Resolution Trust Corporation ("RTC") since 1990. Prior to the merger between the RTC and FDIC, Ms. Chappell-Johnson was a grade CG-11. However, as a result of a 1996 reorganization resulting from the RTC and FDIC merger, she was reduced to the CG-9 level. Later as part of a reduction-in-force ("RIF") by the FDIC management, Ms. Chappell-Johnson was reassigned and

downgraded to a CG-8 position in approximately August 2003.  Chappell-Johnson is currently

employed as a Human Resources Specialist (Benefits) in the FDIC, Benefits Center, Human

Resources Branch, Division of Administration.  *See* Defendant's Exhibit ("DX") 7 (Chappell-

Johnson Affidavit, dated August 5, 2005).

From April 1992-September 1996, Chappell-Johnson served as a (Chief) Supervisor,

Payroll/Personnel System Specialist.  From June 1990-April 1992, prior to being promoted to

CG-11, Chappell-Johnson served in the same position at the CG-9 level performing essentially

the same duties that she performed as a CG-11.  Plaintiff's Exhibit ("PX") 1, Chappell-Johnson

Application for Vacancy Announcement # 2004-HQ-2637, CG-0201-7/9/11, at 2-4.  As the

(Chief) Supervisor, Payroll/Personnel System Specialist, Chappell-Johnson had performed all of

the duties delineated in the position description.  *See* PX 2, Position Description, Supervisory

Payroll/Personnel System Specialist, GG-301-11 at 2-3.  From 1996-2004, Chappell-Johnson

served as a Personnel Management Specialist, Grade 9, with the FDIC.

**II.     Ms Chappell-Johnson Is Denied Promotion for a Human Resources Specialist
          (Information Systems and Compensation), CG-201-7/9/11 Position at FDIC.**

In August 2004, the FDIC advertised a vacant Human Resources Specialist position in the

Division of Administration, Human Resources Branch, HR Service Center, Operations, in

Washington, D.C.  DX 30.  The announcement provided that the position could be filled at the

CG-7, CG-9, or CG-11 grade, with the full performance level grade at CG-11.  *Id.* at 1.  The

duties of the position were the same duties that Ms. Chappell-Johnson had performed when she

served as (Chief) Supervisor, Payroll/Personnel System Specialist at the CG-9 and CG-11 levels.

*Compare* PX 2 *with* DX 30.  In fact, a comparison of the position descriptions reveals that the

- 3 -

vacant Human Resources Specialist (Information Systems and Compensation) position at the

CG-11 level had the same position description as the Payroll/Personnel System Specialist, GG-

301-9.  PX 6, Position Description, Human Resources Specialist (Information Systems and

Compensation), CG-201-11 (Line 4(b) - "Previously - Payroll/Personnel System Specialist, GG-

301-9").  As such, Ms. Chappell-Johnson had performed the duties of the vacant position when

she served as the (Chief) Supervisor, Payroll/Personnel System Specialist at the CG-9 and CG-11

levels for several years.  PX 1, Chappell-Johnson Application, at 2-4.

> **A.    The Human Resources Office Determines that Chappell-Johnson Is Uniquely Qualified for the Human Resources Specialist (Information Systems and Compensation) Position.**

Ms. Chappell-Johnson's application for the CG-7/9/11 Human Resources Specialist

(Information Systems and Compensation) position reveals that she had served as a CG-9 and

CG-11 Supervisory Payroll/Personnel Systems Specialist.  PX 1 at 3-4.  Indeed, the duties

identified in the summary section of the vacancy announcement were the very duties Ms.

Chappell-Johnson had performed successfully when she served successively as Supervisor,

Payroll/Personnel System Specialist at the CG-9 and CG-11 levels.  *See* PX 1 at 2-4; *see also* DX

30.

In fact, Chappell-Johnson's application for vacancy Announcement 2004-HQ-2637

reflects that she had performed all the duties required of the Human Resources Specialist

(Information Systems and Compensation), CG-0201-7/9/11.  *Compare* PX 1, Chappell-Johnson

Application at 1-4, *with* DX 30, Vacancy Announcement # 2004-HQ-2637 at 2; *see also*, PX 3

(Shirley Purnell May 14, 2007, Dep.) at 235-243 (testifying that she reviewed Chappell-

Johnson's application/resume in an earlier selection process and agreeing that Chappell-

Johnson's application/resume addressed the duties for the Human Resources Specialist (Information Systems and Compensation position at the CG-11 level)). Ms. Chappell-Johnson's application reveals that she had extensive experience working with a wide range of both internal FDIC and NFC automated personnel and payroll systems, as well as experience in garnishments, child support, and alimony payment cases. PX 1, Chappell-Johnson Application, at 5-6.

Based on her qualifications, the Human Resources office of the FDIC adjudged Ms. Chappell-Johnson to be the only applicant eligible and qualified for the position at all three grade levels. *See* DX 15, Merit Promotion Roster. Ms. Potucek agreed with that assessment. *See* DX 20, Potucek November 29, 2007, Dep. at 115. Indeed, Ms. Potucek admitted at her deposition that "[Chappell-Johnson] was better qualified for the [] position than [the selectee] because [Chappell-Johnson] previously served in the announced position at the CG-11 level for about three to four years. Indeed, [Chappell-Johnson] had performed all of the functions that were required by way of the vacancy announcement. The selectee had not." *See* DX 20, Potucek November 29, 2007 Dep. at 173-174.

> **B.** **The Selection Officials for the Human Resources Specialist (Information Systems and Compensation) Position are Tainted by Their Exposure to Ms. Chappell-Johnson's Prior EEO Activity.**
>
> > **1.** **Shirley Purnell's Admitted Involvement In to Ms. Chappell-Johnson's Prior EEO Activity**.

The ultimate selecting official for the position vacancy that is at issue in this case, Shirley Purnell, was aware of and involved in addressing some of Chappell-Johnson's prior EEO complaints. *See* DX 11, EEO Counselor's Report FDICEO-050017 (noting that Ms. Chappell-Johnson had filed previous EEO complaints, numbered RTC-96-30 (filed 12/16/99), FDICEO-

990110 (filed 2/21/01), FDICEO-030026 (filed 9/9/03), and FDICEO-040041 (filed 8/20/04)).

Indeed, Purnell was involved in a settlement offer from the FDIC to Chappell-Johnson. PX 3

(Purnell, May 14, 2007, Dep.) at 173-74, 197-98 (provided position description to investigator

for prior EEO complaint(s) filed by Chappell-Johnson); *see also* PX 4 (Purnell Affidavit, dated

December 15, 2004, in FDICEO-040041) at ¶ 18 (stating that she was aware of Chappell-

Johnson's prior activity at the time of the previous non-selection identified as FDICEO-040041);

*see also*, DX 7 (Chappell-Johnson Affidavit, dated August 5, 2005) at 2 (FDIC selecting officials

aware of her prior EEO activity). In addition, Ms. Purnell was involved in an effort to

mediate/resolve an earlier EEO complaint filed by Chappell-Johnson. PX 5 (EEO Counselor's

Report FDICEO-040041 (indicating period for mediation of May-August 2004).

> **2.     A Jury Could Find that Ms. Potucek Lied About not Knowing Ms.
>          Chappell-Johnson had Engaged in EEO Activity.**

Ms. Potucek was also aware of Chappell-Johnson's EEO activity when Potucek served as

the Human Resources Officer for FDIC (starting in approximately the fall of 2003, DX 19,

Potucek November 15, 2007 Dep. at 26) and when Ms. Chappell-Johnson applied for the vacant

HR Specialist, CG-7/9/11 position prior to September 8, 2004, DX 30, Vacancy Announcement

# 2004-HQ-2637 (Human Resources Specialist (Information Systems and Compensation)), CG-

0201-7/9/11. In addition, Ms. Chappell-Johnson has testified that she discussed EEO complaints

with Ms. Potucek. DX 9, Chappell-Johnson's Dep. at 71-72. After claiming she had no prior

knowledge, Ms. Potucek was forced to admit in her deposition testimony that she was aware that

her superior went to the Legal Department regarding an EEO complaint filed by Chappell-

Johnson. *See* DX 19, Potucek November 15, 2007, Dep. at 74. *But see* DX 18, Potucek Aff.,

- 6 -

dated August 8, 2005 at 1 ("I personally had no knowledge of the [Chappell-Johnson's] prior EEO Complaint activity."); *but see also* DX 19 (Potucek November 15, 2007, Dep.) at 73-74 (no conversation with Ms. Chappell-Johnson prior to August 2004 regarding Chappell-Johnson filing EEO formal complaints with FDIC).

### C.    The FDIC Spoils Evidence of the Interview Panel Deliberations.

Applicants for the CG-7/9/11 Human Resources Specialist (Information Systems and Compensation) position were interviewed by a panel consisting of Susan Boosinger and Jo Rita Campbell. DX 20, Potucek November 29, 2007, Dep. at 67. FDIC guidance provides that results of an interview panel must be retained for two years, DX 13, FDIC Structured Interview - Guidance for Interviewers and Selecting Officials at 3. However, the FDIC has failed to preserve the results of the interview panel for the CG-7/9/11 Human Resources Specialist (Information Systems and Compensation) position. DX 20, Potucek, November 29, 2007, Dep. at 118, 125, 128, 137; *see also* DX 24, Potucek Supplemental Aff. II, dated February 1, 2008, at ¶ 11. As a result of the FDIC's failure to preserve this important evidence, contemporaneous records of the questions presented to and the answers provided by the candidates during the interview panel that was conducted by Ms. Boosinger and Ms. Campbell are not available.

### D.    Potucek Violates FDIC Structured Interview and Selection Procedures and Selects a Less Qualified Younger Male for the Human Resources Specialist (Information Systems and Compensation) Position.

#### 1.    Ms. Potucek Violated FDIC Structured Interview and Selection Processes.

FDIC has established guidance for conducting interviews during the selection process. DX 13. Selecting officials "*should* participate in the interviews." DX 13 at 2 (Emphasis added).

- 7 -

However, Ms. Potucek did not participate in the interview panel. DX 20, Potucek November 29, 2007, Dep. at 67 (interview panel consisted of two individuals, Jo Rita Campbell and Susan Boosinger). Ms. Potucek has offered no reason or explanation that might even come close to comporting with the exception noted in the FDIC's guidance. DX 13 at 2 (it is reasonable that the selecting official might not participate in interviews "when coordinating large numbers of vacancies available worldwide"). Thus, Ms. Potucek violated FDIC guidelines.

While Ms. Potucek testified that the interview panel was required to only recommend the top candidates to her, there is no such rule or requirement. DX 13 (no mention that interview panels only submit or recommend the top candidate(s) to the selecting official). In fact, Potucek claims that the panel in this case did give her recommendations. DX 20, Potucek, November 29, 2007 Dep. at 124. However, a jury could reject Potucek's testimony as Susan Boosinger, a panel member, has testified that the panel made no recommendation to Ms. Potucek. DX 3, Boosinger November 16, 2007, Dep. at 66, 90-91.

Ms. Potucek also claims that she based her selection/recommendation on her personal experience working with Roger Little. *See* DX 20, Potucek November 29, 2007, Dep. at 169. However, FDIC policy provides that "[t]he Selecting Official should rely on the interview documentation, any discussions with other members of the interview panel and the application materials submitted by the candidate to make a final decision." DX 13 at 3. While Ms. Potucek has claimed that she complied with the FDIC's "best business practices guidelines," DX 20, Potucek November 29, 2007 Dep. at 130; DX 20, Potucek November 29, 2007 Dep. at 133 (Potucek testifying that her "decision [] was *only* based on what the structured interview panel recommended to [her]") (emphasis added), Ms. Potucek also claims that she impermissibly

deviated from the established procedures for interviewing and selecting a candidate and relied on

her knowledge fo the candidate to fill the vacancy.  As such, a jury could reject either or both

versions and infer that she is dissembling to cover a discriminatory/retaliatory animus.

> **2.  Ms. Potucek Selects a Less Qualified Younger Male for the Human Resources Specialist (Information Systems and Compensation) Position.**

Although she did not participate in the interview panel, DX 20, Potucek November 29,

2007, Dep. at 67, Potucek selected Roger Little for the Human Resources Specialist (Information

Systems and Compensation) position.  DX 6, Candidate Selection Recommendation; DX 15,

Merit Promotion Roster.  Mr. Little is a 45-year old male who had never made an EEO

complaint.  *See* PX 8, EEO Information for Applicants.  However, a comparison of the duties

involving the FDIC unique personnel and compensation automated system, CHRIS, DX 30,

Vacancy Announcement # 2004-HQ-2637, and Mr. Little's application shows that he did not

have the kind of experience required by the position, as his experience was limited to working

with the NFC system, but not the FDIC's CHRIS system.  PX 7 (Roger Little Application); *see*

*also* DX 20, Potucek November 29, 2007 Dep. at 101-106.  As such, Mr. Little did not

demonstrate any experience or knowledge, whereas Ms. Chappell-Johnson had worked for years

with both the NFC automated system and the FDIC automated human resources system, CHRIS.

Moreover, in responding to another KSA ("Ability to use personnel automated systems to

process complex personnel actions, (i.e., retroactive personnel actions, garnishments, child

support, alimony payment cases)"), Mr. Little noted that he had served as the "[b]ackup for

garnishments."  PX 7 (Roger Little Application) at 4.  While Little fails to mention any work

experience in the other "complex personnel actions," such as child support and alimony payment

cases, Ms. Chappell-Johnson's application listed her experience as a primary staffer for all such complex personnel actions.  PX 1, Chappell-Johnson Application at 3-6.

### E.   Ms. Purnell Makes the Final Decision on the Selection, as the Approving Official.

#### 1.   Ms. Purnell is Well Aware that Chappell-Johnson was Fully Qualified to Fill the Vacant Human Resources Specialist Position.

In 2004, during a consideration/selection process, Ms. Purnell reviewed Chappell-Johnson's application and concluded that Ms. Chappell-Johnson had performed all the duties identified in the CG-11/12 position.  *See* PX 3 (Purnell May 14, 2007 Dep.) at 235-243 (testifying that she had previously reviewed Chappell-Johnson's application/resume).  Ms. Purnell had also reviewed the eligibility list which showed that only Ms. Chappell-Johnson was qualified at the CG-11 level.  DX 26 (Purnell November 16, 2007, Dep.) at 61-64; *see also* DX 15, Merit Promotion Roster (reflecting Ms. Purnell's initials on the document).  As such, Ms. Purnell was well aware that Ms. Chappell-Johnson was ready to perform the duties of the CG-7/9/11 Human Resources Specialist (Information Systems and Compensation).  Even though Ms. Purnell knew that Ms. Chappell-Johnson was the only candidate qualified for the vacant position at the CG-11 level and that only Ms. Chappell-Johnson had performed all the duties required of the vacant position at all three grade levels, Ms. Purnell approved the selection of Mr. Little instead of Ms. Chappell-Johnson.

#### 2.   Despite her Knowledge, Ms. Purnell Approves the Selection of the Lesser Qualified Applicant.

Ms. Potucek has alternately testified that she served as either the recommending and/or selecting official in this matter, *compare* DX 18, Potucek Aff., dated August 8, 2005, at 1

- 10 -

(Potucek served as recommending official and Ms. Purnell, her boss, signed off as selecting official) *with* DX 24, Potucek Supplemental Aff. II, dated February 1, 2008, at ¶ 5 (asserting that she "misspoke" in her first affidavit when she referred to herself as the recommending official). Indeed, it is undisputed that Potucek's recommendation/selection was not final until Ms. Purnell approved the selection. DX 19, Potucek November 15, 2007, Dep. at 101-102; DX 26, Purnell November 16, 2007, Dep. at 15-16 (selections by subordinate managers were not true selections without her approval); *see also* DX 6, Candidate Selection Recommendation (reflecting both Potucek's and Purnell's signatures), DX 15, Merit Promotion Roster (reflecting Potucek's signature and Purnell's initials). Therefore Ms. Purnell's motive, as well as Ms. Potucek's, is at issue in this case.

## ARGUMENT

### I.    Summary Judgment Standards.

Summary judgment is proper only against "a party who fails to make a showing sufficient to establish the existence of any element essential to that party's case, and on which that party will bear the burden of proof at trial." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).[1] Accordingly, to make the determination on a motion for summary judgment, the court must evaluate all of the evidence before it. *Celotex*, 477 U.S. at 323. In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court makes clear that disputes over facts, which might affect

---

[1]Defendant's motion for summary judgment incorrectly states that "Rule 56 does not require the moving party to . . . show that absence of a genuine issue of material fact." Def.'s Mem. at 6 (*citing Celotex*, 477 U.S. at 323. In fact, *Celotex* cites the applicable section of Rule 56(c) - "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, *show that there is no genuine issue as to any material fact*." 477 U.S. at 323, fn 4. (Emphasis added).

the outcome of the suit under the governing law, will preclude the entry of summary judgment.

477 U.S. 242, 248 (1986).  Indeed, the evidence presented must always be construed in favor of

the party opposing the motion for summary judgment, and it is that party who is also to be

accorded the benefit of all favorable inferences that can be drawn from the record evidence.

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Washington Post Co. v. United

States Dep't of Health and Human Srvs.*, 865 F.2d 320, 325 (D.C. Cir. 1989).  Thus, the moving

party must demonstrate that there is an absence of evidence to support the nonmoving party's

case.  *Celotex,* 477 U.S. at 323.  If, and only if, the moving party meets this burden, the burden

passes to the nonmoving party to establish the existence of a disputed factual element essential to

his case with respect to which he bears the burden of proof.  *Id.*  Where the record taken as a

whole could lead a rational trier of fact to find for the nonmoving party, the motion for summary

judgment cannot be granted.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986).

 In Title VII cases, the D.C. Circuit has directed that courts view summary judgment with

special caution because these cases involve issues of discriminatory motive and intent.  *See Aka

v. Washington Hosp. Ctr*, 116 F.3d 876, 879 (D.C. Cir. 1997) ("because employment

discrimination claims center on the issue of an employer's intent, and 'writings directly

supporting a claim of intentional discrimination are rarely, if ever, found among an employer's

corporate papers,' an added measure of 'rigor,' or 'cautio[n], is appropriate in applying this

standard to motions for summary judgment in employment discrimination cases") (internal

citations omitted); *Albritton v. Kantor*, 944 F. Supp. 966, 970 (D.D.C. 1996) ("because

discriminatory intent and proof of disparate treatment are difficult to establish, courts must view

summary judgment with special caution and therefore must be particularly careful to view all of the evidence in the light most favorable to the plaintiff"); *Ross v. Runyon*, 859 F. Supp. 15, 21-22 (D.D.C. 1994) (recognizing that discriminatory intent and proof of disparate treatment are notoriously difficult to establish, so the court must be extra-careful to view all evidence in the light most favorable to the plaintiff); *Johnson v. Digital Equip. Corp.*, 836 F. Supp. 14, 18 (D.D.C. 1993) (same). Accordingly, if a reasonable fact-finder could infer discrimination based on the evidence submitted, then summary judgment is inappropriate. *See Anderson*, 477 U.S. at 248 (Summary judgment cannot be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."); *Albritton*, 944 F. Supp. at 970 (summary judgment not appropriate "[i]f a reasonable fact finder could infer discrimination based on the evidence submitted"); *Hayes v. Shalala*, 902 F. Supp. 259, 264 (D.D.C. 1995)(same). Therefore, the trial court's focus must be whether a genuine issue exists as to whether the defendant intentionally discriminated against the plaintiff. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993) ("'[T]he defendant must clearly set forth, through the introduction of admissible evidence,' reasons for its actions which, *if believed by the trier of fact,* would support a finding that unlawful discrimination was not the cause of the employment action.") (emphasis in original) (internal citations omitted); *Barbour v. Merrill*, 48 F.3d 1270, 1276 (D.C. Cir. 1995) ("plaintiff need only establish a prima facie case and introduce evidence sufficient to discredit the defendant's proffered nondiscriminatory reasons; at that point, the factfinder, if so persuaded, may infer discrimination").

II.    **Chappell-Johnson Has Established a *Prima Facie* Case of Gender and Age Discrimination.**

Title VII of the Civil Rights Act of 1964, makes it unlawful for the federal government to discriminate in employment on the basis of sex or race. 42 U.S.C. § 2000e-16. In considering discrimination and retaliation cases, Courts often employ the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, (1973). *See Brown v. Brody,* 199 F.3d 446 (D.C.Cir.1999) (*McDonnell Douglas* test applies to federal employees' Title VII claims). To establish a *prima facie* case of discrimination, the plaintiff must show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002); *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999). The burden of establishing a *prima facie* case "is not onerous." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981).

Defendant does not dispute that Ms. Chappell-Johnson satisfies this burden as (1) she is an older female, (2) she applied, and was deemed qualified, for the positions in question, and (3) the FDIC filled the vacancy at issue with a person outside of her protected class(es). *See* Defendant's Memorandum in Support of Motion for Summary Judgment ("Def. Mem.) at 8. Therefore, Ms. Chappell-Johnson has established a *prima facie* case of discrimination.

III.   **Chappell-Johnson Has Established a *Prima Facie* Case of Unlawful Retaliation, and There are Issues of Fact Regarding Ms. Potucek's and Ms. Purnell's Motives Prior Their Non-Selection of Ms. Chappell-Johnson.**

To establish a *prima facie* case of unlawful retaliation a plaintiff must show that: (1) she engaged in statutorily protected activity; (2) her employer took an adverse personnel action

- 14 -

against her; and (3) a causal connection exists between the two. *Carney v. The American University*, 151 F.3d 1090, 1095 (D.C. Cir 1998); *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985). "As in a case of disparate treatment, this initial burden is not great. Plaintiff merely needs to establish facts adequate to permit an inference of retaliatory motive." *McKenna v. Weinberger*, 729 F.2d 783, 790 (D.C. Cir. 1984). Thus, to prove the third element, a plaintiff may produce evidence sufficient to show that the adverse action closely followed the protected activity. *Gleklen v. Democratic Congressional Campaign Committee*, 199 F.3d 1365, 1368 (D.C. Cir. 2000) ("Temporal proximity is often found sufficient to establish the requisite causal connection for [retaliation] claims.").

Although defendant attempts to do so, it cannot dispute the fact that Ms. Chappell-Johnson satisfies this burden as (1) she engaged in statutorily protected activity; (2) her employer took an adverse personnel action against her by denying her promotion; and (3) the adverse action occurred while her federal discrimination lawsuit was pending. *Singletary v. D.C.*, 351 F.3d 519, 524, 525 (holding that in considering whether there was sufficient temporal proximity to establish retaliation, the Court must take into account all forms of protected activity, including actions taken in support of complaints of discrimination); *Johnson v. Maddox*, 230 F.Supp.2d 1, 10 (D.D.C. 2002) (finding temporal proximity satisfied because plaintiff pursued lawsuit at the time of his termination). Defendant contends that Chappell-Johnson cannot establish a causal connection because Potucek was not aware of her EEO prior complaints, when she did not select Chappell-Johnson. *See* Def.'s Mem. at 13-15. However, there is evidence to support a finding that both Ms. Potucek and Ms. Purnell were well aware of Chappell-Johnson's ongoing prior EEO activity. DX 19 (Potucek November 15, 2007, Dep.) at 74 (aware that her superior went to

- 15 -

the Legal Department regarding an EEO complaint filed by Chappell-Johnson); PX 4 (Purnell

Affidavit, dated December 15, 2004, in FDICEO-040041) at ¶ 18 (stating that she was aware of

Chappell-Johnson's prior activity at the time of the previous non-selection identified as

FDICEO-040041).  Ms. Purnell testified in a deposition that she was personally involved in

calculating pay/salary data as part of a settlement offer by the agency in an ongoing EEO

complaint.  PX 3 (Purnell, May 14, 2007, Dep.) at 173-74, 197-98 (provided position description

to investigator for prior EEO complaint(s) filed by Chappell-Johnson).

        While Ms. Potucek claims she did not know about Ms. Chappell-Johnson's protected

activity, she has admitted that she was aware that her superior was involved in an EEO complaint

filed by Chappell-Johnson.  DX 19 (Potucek November 15, 2007, Dep.) at 74.  In addition, a jury

could credit Ms. Chappell-Johnson's testimony that she discussed her prior EEO activity with

Ms. Potucek.  DX 9, Chappell-Johnson's Dep. at 71-72 (conversations with Potucek about her

EEO complaints); *see also*, DX 7 (Chappell-Johnson Affidavit, dated August 5, 2005) at 2

(same).  Having resolved this conflicting evidence in Ms. Chappell-Johnson's favor, a jury could

then conclude that Ms. Potucek was fully aware of and/or involved in Chappell-Johnson's

previous EEO complaints and that she lied when she said she did not know about Ms. Chappell-

Johnson's EEO complaints as part of a mendacious attempt to cover up retaliation against Ms.

Chappell-Johnson.  Therefore, defendant's motion for summary judgment must be denied.

**IV.     A Reasonable Jury Could Reject the Reasons Proffered by FDIC for its Non-
          Selection of Ms. Chappell-Johnson As Pretextual.**

        This Circuit has established that "[usually, proffering 'evidence from which a jury could

find that [the employer's's stated reasons. . .were pretextual. . .will be enough to get a plaintiff's

claim to a jury.'" *George v. Leavitt*, 407 F.3d 405 (D.C. Cir. 2005). Thus, plaintiff's evidence must be viewed in the light most favorable to Chappell-Johnson to determine whether the jury could reject Potucek's claim that Little was the best qualified candidate and, therefore, infer discrimination and/or retaliation. Here, there is evidence that the selecting official falsely claimed she had no knowledge of Ms. Chappell-Johnson's prior EEO activity. From this misrepresentation a reasonable jury could infer that she is attempting to cover up her discriminatory and/or retaliatory motives for rejecting Ms. Chappell-Johnson's application. *See Reeves v. Sanderson Plumbing*, 530 U.S. 133, 147-48 (2000) ( holding that inference of discrimination is "consistent with the general principle of evidence law that the fact finder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt'").

In addition, under *Aka* and *Reeves*, Chappell-Johnson's evidence - - that Mr. Little did not have the breadth of experience that Chappell-Johnson had, that Ms. Potucek circumvented the FDIC interview process and then the FDIC spoiled the evidence of the panel deliberations, that Ms. Potucek relied on subjective factors, such as communications skills and performance during an interview, and Ms. Potucek's and Ms. Purnell's knowledge of and involvement in Ms. Chappell-Johnson's prior EEO activity - - if credited by the finder of fact, is sufficient to support an inference that the reasons advanced by the FDIC for its actions are pretextual. As such, this evidence viewed in the light most favorable to Chappell-Johnson is sufficient to raise an inference that she was not selected for discriminatory/retaliatory reasons and to conclude that she was better qualified for the position.

A.    **A Reasonable Jury Could Infer that Ms. Potucek was Covering up her Unlawful Motives when she Lied About her Knowledge of Ms. Chappell-Johnson's EEO Complaints.**

"Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are jury functions, not those of the judge." *Reeves*, 530 U.S. at 150-51. At summary judgment, the trial court "must disregard evidence the jury is not required to believe" and credit evidence of the movant that is uncontradicted and unimpeached only "to the extent that the evidence comes from disinterested witnesses." *Id.* Only a jury can resolve the disputed issues of fact raised by this record.

Here, Ms. Potucek claims that she had no knowledge of Ms. Chappell-Johnson's prior EEO activity. *See* DX 18, Potucek Aff., dated August 8, 2005 at 1 ("I personally had no knowledge of [Chappell-Johnson's] prior EEO Complaint activity."); *see also* DX 19 (Potucek November 15, 2007, Dep.) at 73-74 (no conversation with Ms. Chappell-Johnson prior to August 2004 regarding Chappell-Johnson filing EEO formal complaints with FDIC). Yet, Ms. Chappell-Johnson testified that she discussed her prior EEO activity with Ms. Potucek, DX 9, Chappell-Johnson's Dep. at 71-72 (conversations with Potucek about her EEO complaints); *see also*, DX 7 (Chappell-Johnson Affidavit, dated August 5, 2005) at 2 (same), and Ms. Potucek has admitted she knew that her supervisor was involved in EEO complaints by Ms. Chappell Johnson. DX 19 (Potucek November 15, 2007, Dep.) at 73-74. A reasonable jury could chose to believe Ms. Chappell-Johnson and conclude that Ms. Potucek is lying to cover up her discriminatory and/or retaliatory motives for rejecting Ms. Chappell-Johnson's application.

In addition, a reasonable jury could conclude that Ms. Potucek's claim that she merely followed the panel's recommendation in selecting Mr. Little is a complete fabrication. First, one

- 18 -

of the interview panelists testified that the panel did not "make a recommendation to Lorinda Potucek," but "gave her the ratings."  DX 3, Boosinger, November 16, 2007, Dep. at 66, 90-91. Second, the guidelines do not provide for panel recommendations - although Ms. Potucek insists there is such a rule.  DX 13 (no mention that interview panels submit recommendations to the selecting official).

Finally, the FDIC failed to preserve evidence of the panel deliberations as required by FDIC policy.  The general rules of evidence law create an adverse inference when evidence has been destroyed and "(1) ... the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) ... the records were destroyed with a culpable state of mind; and (3) ... the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."  *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir.2002) (internal citation and quotation marks omitted); *see also* 31A C.J.S. Evidence § 168 (2007); 2 Kenneth S. Brown, McCormick On Evidence § 264 (6th ed.2006).  "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation."  *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 436 (2d Cir.2001). Thus, "[o]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents."  *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y.2003).  Here the FDIC had exclusive control over the records of the interview panel, and FDIC policy required that these records be preserved.  However, without providing any explanation, the FDIC allowed this evidence to be lost.  Therefore, based upon these facts a

- 19 -

jury could infer that the lost evidence would support Ms. Chappell-Johnson's claim that Ms. Potucek is attempting to cover up her discriminatory and/or retaliatory motives.

**B.    There are Issues of Fact Regarding Whether Mr. Little was the Best Qualified Candidate.**

In *Aka*, 156 F.3d at 1294, the Court of Appeals held that a review of the applicant's relevant qualification is appropriate to determine if ". . .the fact finder can legitimately infer that the employer consciously selected a less-qualified candidate. . ." The Court goes on to state that a "reasonable juror would [not] in every case defer to the employer's assessment. If that were so, no job discrimination case could ever go to trial." *Id.* Notwithstanding this holding, the FDIC asserts that a plaintiff cannot prove discrimination or retaliation, as Ms. Chappell-Johnson has no evidence other than her own assertions of her qualifications. Def. Mem. at 11.[2] This is not the

_____

[2]Defendant's statement that Ms. Potucek has selected females in the past is evidence that she does not discriminate based on gender, Def.'s Mem. at 11, fn 8, must be rejected. Defendant does not provide any evidence of the circumstances regarding those selections to be applicable in the instant matter. For example, there is no indication if males had even applied for the positions in question. Without such evidence, Ms. Potucek's actions in these other selections do not reasonably mean that she did not prefer to select males. Rule 402 of the Federal Rules of Evidence requires the Court, with certain exceptions, to admit "all relevant evidence" while making clear that "[e]vidence which is not relevant is not admissible." Rule 401 defines "Relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In this regard, courts have always recognized that "under traditional concepts of materiality and relevance" a proper foundation is a prerequisite for the admission of evidence. *United States v. Womack*, 509 F.2d 368, 376 (D.C.Cir. 1974). In *Womack*, the Court rejected comparison evidence as immaterial where the proper foundation had not been shown. The Court described the necessary foundation as including a showing that the comparison evidence was sufficiently similar to the issue at hand to establish its relevance. As such, FDIC's evidence that Potucek had selected female employees should be excluded because FDIC has failed to lay a foundation that connects these selections to Ms. Chappell-Johnson's gender discrimination complaint. FDIC has introduced no evidence regarding the circumstances surrounding the selection of these employees. As a result, it is unknown whether they were competitive selections and, if so, against whom the selectees competed. Indeed, it is possible these other female employees were the only available candidates or that Potucek had no role in

case as the FDIC HR Office conducted an in-depth review of the applications for the position.
*See* DX 15, Merit Promotion Roster. This finding was supported by the record because at the
time of the selection, Chappell-Johnson had more than six years of experience performing the
very duties that were required in the position at issue here, and she had extensive experience
dealing with the organizational-unique policies and procedures, as well as with both the NFC and
FDIC human resources/payroll automation systems. *See* PX 1 (Chappell-Johnson Application);
*see also* DX 15, Merit Promotion Roster. The selectee - Little - has admitted that he lacked the
scope and breadth of experience that Chappell-Johnson possessed. *Compare* PX 1 *with* PX 7
(Little Application). It is undisputed that Chappell-Johnson had successfully performed the
duties of the position in prior assignments with FDIC. *See* PX 1, Chappell-Johnson Application;
PX 3 (Purnell May 14, 2007, Dep.) at 178-190 (agreeing that the duties required for the CG-9,
Payroll/Personnel System Specialist position and performed by Chappell-Johnson, mirrored the
summary of duties in a vacancy announcement for a CG-11/12 Human Resources Specialist
(Information Systems and Compensation position); *see also*, PX 3 (Purnell May 14, 2007 Dep.)
at 235-243 (testifying that she reviewed Chappell-Johnson's application/resume and agreeing that
it addressed the duties identified in the summary of duties in the vacancy announcement [for the

---

their selection - either of which would undercut any alleged probative value of this evidence.
Certainly there is no evidence that female employees were selected over well qualified male
employees or FDIC would have presented the Court with that information. Without any of the
surrounding circumstances or any evidence of similarity between the decision at issue here and
those selections, there is no probative value to this evidence. In order for this evidence to be
relevant, FDIC was required to show that the circumstances of these other selections are logically
and reasonably tied to the circumstances of Ms. Chappell-Johnson's non-promotion. *Minshall v.
McGraw Hill Broadcasting Co.*, 323 F.3d 1273, 1286 (10th Cir. 2003) (evidence that same
decision-maker discriminated against other similarly situated employees was logically and
reasonably tied to discrimination at issue). Accordingly, this evidence must be rejected.

grades CG-11/12]). Indeed, Ms. Potucek testified that Ms. Chappell-Johnson's statement in her

August 5, 2005, Affidavit (at page 2) was true that "[Chappell-Johnson] was better qualified for

the [] position than [the selectee] because [Chappell-Johnson] previously served in the

announced position at the CG-11 level for about three to four years. Indeed, [Chappell-Johnson]

had performed all of the functions that were required by way of the vacancy announcement. The

selectee had not." *See* DX 20, Potucek November 29, 2007 Dep. at 173-174. Based on the

foregoing, a jury could infer that Potucek and Purnell ignored Chappell-Johnson's outstanding

qualifications, and that the FDIC's professed claim that Little was the best qualified candidate is

mere pretext.

### C.     There are Issues of Fact Regarding Whether Ms. Potucek Followed FDIC Guidance and Procedures When she Failed to Select Ms. Chappell-Johnson for the Vacant Position.

When an employer fails to follow its own established procedures, a reasonable juror

could find that this employer was acting with discriminatory animus. *See Johnson v. Lehman*,

679 F. 2d 918, 922 (D.C. Cir. 1982) (finding that "the adherence to or departure from internal

hiring procedures is a factor that the trier of fact may deem probative and choose to consider in

determining the true motivation behind the hiring decision" of an employer). Based upon

Potucek's own testimony, there are genuine issues of fact concerning whether she ignored FDIC

guidelines in the selection process that resulted in Ms. Chappell-Johnson's non-selection. While

Ms. Potucek has asserted that she specifically followed the "best business practices guidelines,"

DX 20, Potucek November 29, 2007 Dep. at 130, there are questions of fact regarding this issue.

Despite established guidance for conducting interviews during the selection process, DX 13 at 2

(selecting officials "*should* participate in the interviews") (emphasis added), Ms. Potucek did not

participate in the interview panel. DX 20, Potucek November 29, 2007, Dep. at 67 (interview panel consisted of two individuals, Jo Rita Campbell and Susan Boosinger). Ms. Potucek has offered no reason or explanation that might even come close to comporting with the exception noted in the FDIC's guidance. DX 13 at 2 (it is reasonable that the selecting official might not participate in interviews "when coordinating large numbers of vacancies available worldwide").

Ms. Potucek also testified that under the best business practices she could not consider any information other than the interview panel's results, DX 20, Potucek November 29, 2007, Dep. at 133. However, she also testified that she "relied on the structured interview panel results, [her] review of [Little's] application, and what [she] knew of [Little's] abilities in working for [her]." DX 20, Potucek November 29, 2007, Dep. at 169. Indeed, Ms. Potucek did not consider Ms. Chappell-Johnson's application during the selection process, DX 20, Potucek November 29, 2007, Dep. at 117, even though she admits that Chappell-Johnson was more qualified than Little. DX 20, Potucek November 29, 2007, Dep. at 173-174.

The FDIC has offered absolutely no evidence to support its bald assertion that the interview panel was only required to identify the top two candidates. Def.'s Mem. at 9; *but compare* DX 20, Potucek November 29, 2007, Dep. at 111 (testifying that "the FDIC best business practices are that the interview panel makes recommendations to the selecting official, and there were two"), *with* DX 13 (no requirement or even mention that an interview panel make recommendations to the selecting official, much less recommending a specific number of candidates to the selecting official). Based upon evidence that Ms. Potucek did not adhere to FDIC policy in making the selection, a jury could infer that Ms. Chappell-Johnson's non-selection was a product of discrimination and retaliation.

**D.    A Jury May Infer Discrimination Based Upon Potucek's Reliance on Subjective Factors.**

A finder of facts could conclude that the significant variance in Ms. Potucek's

descriptions of Ms. Chappell-Johnson's and Mr. Little's qualifications, *see* DX 18, Potucek

August 8, 2005, Affidavit at 2-3 (unfavorably comparing Ms. Chappell-Johnson's qualifications

with Mr. Little's qualifications), were not accurate and that the differences between Chappell-

Johnson's and Little's interview performance, as represented by Ms. Boosinger and Ms.

Campbell, were impermissible criterion. *Aka v. Washington Hosp. Center*, 156 F.3d at 1298-99

(rejection of employer's account of interview "raise[s] strong inference of discriminatory

intent."). Indeed, Ms. Potucek represented that the interview panel recommended Mr. Little

because of his performance during the structured interview. DX 18, Potucek August 8, 2005,

Affidavit at 2 ("the feedback that I got from the interview panel . . . was that the Selectee had a

superb interview . . . as it relates to overall communication skills") Communications skills and

interview performance are the sort of subjective factors that are inherently suspect and upon

resolving such excuses against the employer, allow the jury to find pretext. As the Court of

Appeals observed in *Aka*:

> [C]ourts traditionally treat explanations that rely heavily on subjective
> considerations with caution. Particularly in cases where a jury could reasonably
> find that the plaintiff was otherwise [] better qualified than the successful
> applicant, an employer's asserted strong reliance on subjective feelings about the
> candidates may mask discrimination. Indeed, we observed in *Fischbach v. D.C.
> Department of Corrections*, 86 F.3d 1180, 1184 (D.C.Cir.1996), that an
> employer's heavy use of "highly subjective" criteria, such as "interpersonal skills,"
> could support an inference of discrimination. *See generally Perfetti v. First Nat.
> Bank of Chicago*, 950 F.2d 449, 457 (7th Cir.1991) (discussing "the ease with
> which employers may use subjective factors to camouflage discrimination")
> (citation omitted); *Lilly v. Harris-Teeter Supermarket*, 842 F.2d 1496, 1506 (4th
> Cir.1988); Mark S. Brodin, The Demise of Circumstantial Proof in Employment

Discrimination Litigation: St. Mary's Honor Center v. Hicks, Pretext, and the "Personality" Excuse, 18 BERK. J. EMP. LAB. L. 183, 218-24 (1997) (discussing the difficulties presented by the "personality" rationale for employment decisions).

156 F.3d at 1298.

Thus, subjective factors such as interview skills must be considered with great caution, "[o]therwise, an employer could 'utilize wholly subjective standards by which to judge its employees' qualifications and then plead lack of qualification when its promotion process . . . is challenged as discriminatory.'" *Johnson v. Louisiana*, 351 F.3d 616, 622 (5th Cir. 2003).

## CONCLUSION

The selecting officials acknowledge and the record demonstrates that Ms. Chappell-Johnson was more qualified for the vacant position than the younger, male selectee. Yet, for inexplicable reasons, the selecting officials selected the candidate with the lesser qualifications. This fact, coupled with evidence of a failure to follow established structured interview panel requirements, the spoilage of evidence, the selecting officials' knowledge/involvement in Chappell-Johnson's prior EEO activity, and Ms. Potucek's lack of candor about the fact that she knew about Ms. Chappell-Johnson's EEO complaints is sufficient for a reasonable jury to conclude that Ms. Chappell-Johnson's non-selection for the Human Resources Specialist (Information Systems and Compensation) position was both discriminatory and retaliatory. Therefore, plaintiff respectfully submits that defendant's motion for summary judgment must be denied and that her case should proceed to a jury trial on the merits of her claims.

Respectfully submitted,


_____/s/_____
David H. Shapiro, D.C. Bar # 961326
James E. Simpson, D.C. Bar # 482870
SWICK & SHAPIRO, P.C.
1225 Eye Street, N.W.
Suite 1290
Washington, D.C.  20005
Tel. (202) 842-0300
FAX  (202) 842-1418

Attorneys for Plaintiff

**TABLE OF EXHIBITS FOR PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

PX 1    Chappell-Johnson Application

PX 2    Position Description, Supervisory Payroll/Personnel System Specialist, GG-301-11

PX 3    Purnell, May 14, 2007, Dep.

PX 4    Purnell Affidavit, dated December 15, 2004, in FDICEO-040041

PX 5    EEO Counselor's Report FDICEO-040041

PX 6    Position Description, Human Resources Specialist (Information Systems and Compensation), CG-201-11

PX 7    Roger Little Application

PX 8    EEO Information for Applicants.