UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DOROTHY CHAPPELL-JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-1074 (RCL) |
| MARTIN GRUENBERG, | ) |
| Chairman, Federal Deposit | ) |
| Insurance Corporation, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**STATEMENT OF GENUINE ISSUES**

Pursuant to Local Rule 7.1(h), plaintiff hereby submits her statement of genuine issues in response to the "Statement of Material Facts Not in Dispute" filed by defendant in support of its Motion for Summary Judgment.

**I.    General Response to Defendant's Statements.**

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists." *Mitchell v. DCX, Inc.*, 274 F.Supp. 2d 33, 39 (D.D.C. 2003).  In a discrimination and retaliation action such as this, the material issues are the defendant's motives, whether defendant took adverse employment actions against Chappell-Johnson, and the legitimacy of any alleged non-discriminatory reasons for those actions. Yet, for the most part, the majority of facts recited in defendant's statement are not "material" to these issues.  Thus, even if those facts are accepted, they do not entitle defendant to judgment. *See United States v. Winstead,* 74 F.3d 1313, 1320 (D.C.Cir 1996) ("material fact" defined as "a fact that would be of importance to a reasonable person in making a decision about a particular matter or transaction.").  As such, defendant's statements do not satisfy the requirement of Local Rule 7 (h)

that defendant provide a "a statement of *material* facts as to which the moving party contends

there is no genuine issue."  Therefore, defendant's motion for summary judgment must be denied.

## II.     Genuine Issues of Fact

1.      *Whether Dorothy Chappell-Johnson was the best qualified candidate for the CG-7/9/11
        Human Resource Specialist (Information Systems and Compensation) position.*

        The position description for the vacant position at the CG-11 level had previously been

the position description for the position of Payroll/Personnel System Specialist, GG-301-9.  PX

6, Position Description, Human Resources Specialist (Information Systems and Compensation),

CG-201-11 (Line 4(b) - "Previously - Payroll/Personnel System Specialist, GG-301-9").  Ms.

Chappell-Johnson had performed all of those duties while also serving as a CG-9 and CG-11

Supervisory Payroll/Personnel Systems Specialist for several years.  *Compare* PX 1, Chappell-

Johnson Application at 1-4, *with* DX 30, Vacancy Announcement # 2004-HQ-2637 (Human

Resources Specialist (Information Systems and Compensation)), CG-0201-7/9/11 at 2; *see also*,

PX 3 (Purnell Mya 14, 2007, Dep.) at 235-243 (testifying that she reviewed Chappell-Johnson's

application/resume in an earlier selection process and agreeing that it addressed the duties

identified in the summary of duties in the vacancy announcement [for the Human Resources

Specialist (Information Systems and Compensation) position at the grades CG-11/12]).  Ms.

Chappell-Johnson had performed those duties while also serving as a supervisor for several

years.  PX 1, Chappell-Johnson Application, at 2-4.  Indeed, Ms. Chappell-Johnson was the only

candidate who was determined fully qualified and eligible to serve in the vacant position at all

three grade levels.  DX 15, Merit Promotion Roster.

        Indeed, the duties identified in the summary section of the vacancy announcement were

duties that Ms. Chappell-Johnson had performed during the period 1990-1996, when she served

successively as Supervisor, Payroll/Personnel System Specialist at the CG-9 and CG-11 levels.

*See* PX 1, Chappell-Johnson Application at 2-4 and DX 30, Vacancy Announcement # 2004-HQ-

2637 (Human Resources Specialist (Information Systems and Compensation)), CG-0201-7/9/11.

Chappell-Johnson had performed those duties successfully.

Although she did not select Ms. Chappell-Johnson for the vacant CG-7/9/11 position, Ms.

Potucek testified that it was true that Chappell-Johnson was more qualified for the position than

Mr. Little. *See* DX 20, Potucek November 29, 2007 Dep. at 173-174 (agreeing that Chappell-

Johnson was more qualified than the selectee).

2.      *Whether the selectee - a younger male - was less qualified than Chappell-Johnson.*

The vacancy announcement for the Human Resources Specialist (Information Systems

and Compensation) position identified duties involving the FDIC unique personnel and

compensation automated system, CHRIS.  *See* DX 30, Vacancy Announcement # 2004-HQ-2637

(Human Resources Specialist (Information Systems and Compensation)), CG-0201-7/9/11.  In

responding to the vacancy announcement's KSAs, Mr. Little, the selectee, only mentions working

with the NFC system, but not the FDIC's CHRIS system.  PX 7 (Roger Little Application); *see*

*also* DX 20, Potucek November 29, 2007 Dep. at 101-106.  In this critical duty of the position,

Mr. Little did not demonstrate any experience or knowledge, whereas Ms. Chappell-Johnson had

worked for years with both the NFC automated system and the FDIC automated human resources

system, CHRIS.

Moreover, in responding to another KSA ("Ability to use personnel automated systems to

process complex personnel actions, (i.e., retroactive personnel actions, garnishments, child

- 3 -

support, alimony payment cases)"), Mr. Little noted that he had served as the "[b]ackup for

garnishments." PX 7 (Roger Little Application) at 4. While Little fails to mention any work

experience in the other "complex personnel actions," such as child support and alimony payment

cases, Ms. Chappell-Johnson's application listed her experience as a primary staffer for all such

complex personnel actions. PX 1, Chappell-Johnson Application at 3-6.

Although she selected Mr. Little for the vacant CG-7/9/11 position, Ms. Potucek testified

that it was true that Chappell-Johnson was more qualified for the position than Mr. Little. *See*

DX 20, Potucek November 29, 2007 Dep. at 173-174 (agreeing that Chappell-Johnson's

statement in her August 5, 2005, Affidavit (at page 2) was true).

3.    *Whether a jury could find that Potucek and Purnell were motivated by discrimination
      when they failed to select Chappell-Johnson, but did select a younger male.*

A reasonable juror could reject the FDIC's claim that Little was the best qualified

candidate based on the objective evidence. At the time of the selection, Chappell-Johnson had

more than six years of experience performing the very duties that were required in the position at

issue here, and she had extensive experience dealing with the organizational-unique policies and

procedures, as well as with both the NFC and FDIC human resources/payroll automation

systems. *See* PX 1 (Chappell-Johnson Application); *see also* DX 15, Merit Promotion Roster

The selectee - Little - lacked the scope and breadth of experience that Chappell-Johnson

possessed. *Compare* PX 1 *with* PX 7 (Little Application). There is irrefutable evidence that

Chappell-Johnson had successfully performed the duties of the position in prior assignments with

FDIC. *See* PX 1, Chappell-Johnson Application; PX 3 (Purnell May 14, 2007, Dep.) at 178-190

(agreeing that the duties required for the CG-9, Payroll/Personnel System Specialist position and

performed by Chappell-Johnson, mirrored the summary of duties in a vacancy announcement for

a CG-11/12 Human Resources Specialist (Information Systems and Compensation position); *see*

*also*, PX 3 (Purnell May 14, 2007 Dep.) at 235-243 (testifying that she reviewed Chappell-

Johnson's application/resume and agreeing that it addressed the duties identified in the summary

of duties in the vacancy announcement [for the grades CG-11/12]).  Indeed, Ms. Potucek testified

that Ms. Chappell-Johnson's statement in her August 5, 2005, Affidavit (at page 2) was true that

"[Chappell-Johnson] was better qualified for the [] position than [the selectee] because

[Chappell-Johnson] previously served in the announced position at the CG-11 level for about

three to four years.  Indeed, [Chappell-Johnson] had performed all of the functions that were

required by way of the vacancy announcement.  The selectee had not."  *See* DX 20, Potucek

November 29, 2007 Dep. at 173-174.  As such, a jury could infer that the Potucek and Purnell

ignored Chappell-Johnson's outstanding qualifications, and that the FDIC's professed claim that

Little was the best qualified candidate is mere pretext.

4.      *Whether a jury can infer discrimination and/or retaliation by defendant when the
        selecting official failed to follow specific guidance on the process and procedures of
        interviewing and selecting individuals for vacant positions.*

        FDIC has established guidance for conducting interviews during the selection process.

DX 13.  Selecting officials "*should* participate in the interviews." DX 13 at 2 (Emphasis added).

However, Ms. Potucek did not participate in the interview panel.  DX 20, Potucek November 29,

2007, Dep. at 67 (interview panel consisted of two individuals, Jo Rita Campbell and Susan

Boosinger).  Ms. Potucek has offered no reason or explanation that might even come close to

comporting with the exception noted in the FDIC's guidance.  DX 13 at 2 (it is reasonable that

the selecting official might not participate in interviews "when coordinating large numbers of

vacancies available worldwide"). Thus, Ms. Potucek violated FDIC guidelines.

While Ms. Potucek testified that the interview panel was required to only recommend the top candidates to her, there is no such rule or requirement. DX 13 (no mention that interview panels only submit or recommend the top candidate(s) to the selecting official). In fact, Potucek claims that the panel in this case did give her recommendations. DX 20, Potucek, November 29, 2007 Dep. at 124. A panelist, however, testified that the panel did not give Ms. Potucek a recommendation. DX 3 Boosinger November 16, 2007, Dep. at 66.

Ms. Potucek also deviated from the FDIC's best business practices, when she relied upon her personal experience working with Roger Little. *Compare* DX 13 at 3 ("The Selecting Official should rely on the interview documentation, any discussions with other members of the interview panel and the application materials submitted by the candidate to make a final decision.") *with* DX 20, Potucek November 29, 2007, Dep. at 169 (admitting that she relied, in part, on *"what I knew of [Little's] abilities working for me"*) (emphasis added). While Ms. Potucek has represented that she specifically followed the "best business practices guidelines," DX 20, Potucek November 29, 2007 Dep. at 130; *but see* DX 20, Potucek November 29, 2007 Dep. at 133 (Potucek testifying that her "decision [] was *only* based on what the structured interview panel recommended to [her]") (emphasis added), Ms. Potucek actually deviated significantly from the established procedures for interviewing and selecting a candidate to fill a vacancy.

5.    *Whether Potucek's and/or Purnell's failure to select Chappell-Johnson was motivated by reprisal for Chappell-Johnson's earlier and ongoing EEO activity.*

There is evidence to support a finding that both Ms. Potucek and Ms. Purnell were aware of Chappell-Johnson's ongoing prior EEO activity. DX 19 (Potucek November 15, 2007, Dep.)

at 74 (aware that her superior went to the Legal Department regarding an EEO complaint filed by

Chappell-Johnson); PX 4 (Purnell Affidavit, dated December 15, 2004, in FDICEO-040041) at ¶

18 (stating that she was aware of Chappell-Johnson's prior activity at the time of the previous

non-selection identified as FDICEO-040041).  Ms. Purnell testified during a deposition in a

previous EEO complaint litigation phase that she was personally involved in calculating

pay/salary data as part of a settlement offer by the agency in an ongoing EEO complaint.  PX 3

(Purnell, May 14, 2007, Dep.) at 173-74, 197-98 (provided position description to investigator

for prior EEO complaint(s) filed by Chappell-Johnson).  While Ms. Potucek denies knowledge of

Ms. Chappell-Johnson's protected activity, she did testify that she was aware that her superior

went to the Legal Department regarding an EEO complaint filed by Chappell-Johnson.  DX 19

(Potucek November 15, 2007, Dep.) at 74.  In addition, Ms. Chappell-Johnson has testified that

she discussed her prior EEO activity with Ms. Potucek.  DX 9, Chappell-Johnson's Dep. at 71-72

(conversations with Potucek about her EEO complaints); *see also*, DX 7 (Chappell-Johnson

Affidavit, dated August 5, 2005) at 2 (same).  A jury could resolve this conflicting evidence in

Ms. Chappell-Johnson's favor and conclude that Ms. Potucek, like Ms. Purnell, was fully aware

of and/or involved in Chappell-Johnson's previous EEO complaints and reject defendant's claim

that retaliation was not a reason for Ms. Potucek and Ms. Purnell not selecting Chappell-Johnson.

6.    *Whether a reasonable jury could reject the reasons proffered by FDIC for its non-selection of Ms. Chappell-Johnson as pretextual.*

However, Chappell-Johnson's evidence that the selecting official lied in her deposition is

sufficient to establish pretext.  In addition, there are issues of fact about irregularities in the

selection/approval processes that would allow a reasonable jury to reject defendant's claims for

selecting/approving a younger, male candidate for the position. The lack of supporting documents for the selection/approval processes also casts doubt on the legitimacy of the process and the veracity of the results.

Ms. Potucek claims that she had no knowledge of Ms. Chappell-Johnson's prior EEO activity. *See* DX 18, Potucek Aff., dated August 8, 2005 at 1 ("I personally had no knowledge of [Chappell-Johnson's] prior EEO Complaint activity."); *see also* DX 19 (Potucek November 15, 2007, Dep.) at 73-74 (no conversation with Ms. Chappell-Johnson prior to August 2004 regarding Chappell-Johnson filing EEO formal complaints with FDIC). Ms. Chappell-Johnson testified that she discussed her prior EEO activity with Ms. Potucek. DX 9, Chappell-Johnson's Dep. at 71-72 (conversations with Potucek about her EEO complaints); *see also*, DX 7 (Chappell-Johnson Affidavit, dated August 5, 2005) at 2 (same). A reasonable jury could chose to believe Ms. Chappell-Johnson and conclude that Ms. Potucek is lying to cover up her discriminatory and/or retaliatory motives for rejecting Ms. Chappell-Johnson's application.

In addition, a reasonable jury could conclude that Ms. Potucek's claim that she merely followed the panel's recommendation in selecting Mr. Little is a complete fabrication. First, one of the interview panelists testified that the panel did not "make a recommendation to Lorinda Potucek," but "gave her the ratings." DX 3, Boosinger, November 16, 2007, Dep. at 66, 90-91. Second, the guidelines do not provide for panel recommendations - although Ms. Potucek insists there is such a rule. Accordingly, a jury could decide that these falsehoods are designed to cover up Ms. Potucek's discriminatory and/or retaliatory motives.

7.  *Whether defendant's reliance on subjective factors in the selection process is inherently suspect and may infer discrimination.*

A finder of facts could conclude that the significant variance in Ms. Potucek's descriptions of Ms. Chappell-Johnson's and Mr. Little's qualifications, *see* DX 18, Potucek August 8, 2005, Affidavit at 2-3 (unfavorably comparing Ms. Chappell-Johnson's qualifications with Mr. Little's qualifications), were not accurate and that the differences between Chappell-Johnson's and Little's interview performance, as represented by Ms. Boosinger and Ms. Campbell, were impermissible criterion.. Indeed, Ms. Potucek represented that the interview panel recommended Mr. Little because of his performance during the structured interview.  DX 18, Potucek August 8, 2005, Affidavit at 2 ("the feedback that I got from the interview panel . . . was that the Selectee had a superb interview . . . as it relates to overall communication skills") Communications skills and interview performance are the sort of subjective factors that are inherently suspect and upon resolving such excuses against the employer, allow the jury to find pretext. *Aka v. Washington Hosp. Center*, 156 F.3d at 1298-99 (rejection of employer's account of interview "raise[s] strong inference of discriminatory intent."). Thus, subjective factors such as interview skills must be considered with great caution, "[o]therwise, an employer could 'utilize wholly subjective standards by which to judge its employees' qualifications and then plead lack of qualification when its promotion process . . . is challenged as discriminatory.'" *Johnson v. Louisiana*, 351 F.3d 616, 622 (5th Cir. 2003).

## III.  Specific Responses to "Defendant's Statement of Material Facts as to Which There Is No Genuine Issue."

Most of the statements listed in "Defendant's Statement of Material Facts as to Which There Is No Genuine Issue" do not address these material questions, but merely restate the claims

of defense witnesses.  To the extent that defendant's statements touch on the material facts in this case, there is ample evidence to dispute those alleged facts not in dispute.

Defendant's Fact No. 4.  Under the FDIC's Merit Promotion Plan, the Agency's Human Resources Division evaluated all applications for the position and created a roster of applicants who met the basic qualifications for the position.  The Merit Promotion Roster listed six qualified applicants, including Plaintiff.  Potucek Dep. II (Ex. 20) at 122; Merit Promotion Roster (Ex. 15).

**Plaintiff's Response:**  Admitted, to the extent that defendant has accurately represented what is contained in the Merit Promotion Roster.  However, for the purposes of the instant motion for summary judgment, plaintiff asserts that there are sufficient issues of material fact that she was the only eligible and qualified candidate for selection to all three grades (CG-7/9/11) for which the position was advertised.  Indeed, Ms. Potucek testified that Ms. Chappell-Johnson's statement in her August 5, 2005, Affidavit (at page 2) was true that "[Chappell-Johnson] was better qualified for the [] position than [the selectee] because [Chappell-Johnson] previously served in the announced position at the CG-11 level for about three to four years.  Indeed, [Chappell-Johnson] had performed all of the functions that were required by way of the vacancy announcement.  The selectee had not." *See* DX 20, Potucek November 29, 2007 Dep. at 173-174.  Moreover, there is irrefutable evidence that Chappell-Johnson had successfully performed the duties of the position in prior assignments with FDIC and that the approving official, Shirley Purnell, was aware that Chappell-Johnson was highly qualified to serve in a CG-11 Human Resources Specialist (Information Systems and Compensation) position.  *See* PX 1, Chappell-Johnson Application; PX 3 (Purnell May 14, 2007, Dep.) at 178-190 (agreeing that the duties required for the CG-9, Payroll/Personnel System Specialist position and performed by Chappell-Johnson, mirrored the summary of duties in a vacancy announcement for a CG-11/12

- 10 -

Human Resources Specialist (Information Systems and Compensation position); *see also*, PX 3

(Purnell May 14, 2007 Dep.) at 235-243 (testifying that she reviewed Chappell-Johnson's

application/resume and agreeing that it addressed the duties identified in the summary of duties

in the vacancy announcement [for the grades CG-11/12]).

There are sufficient facts that would allow a finder of fact to reject defendant's alleged

legitimate, non-discriminatory reason for failing to select plaintiff for the vacant Human

Resources Specialist (Information Systems and Compensation) position.

Defendant's Fact No. 5. Lorinda Potucek, the Human Resources ("HR") Officer for Operations,
was the Selecting Official ("SO") for the position. Potucek Supp. Aff. II (Ex. 24) at 1.

**Plaintiff's Response:** There are genuine issues of fact regarding this statement. First,

Ms. Potucek has provided conflicting sworn testimony in two different affidavits as to her role in

the selection process. *Compare* DX 18, Potucek Aff., dated August 8, 2005 (stating that she

"served as the Recommending Official for the selection . . . . that was signed off by [Ms.

Purnell], who under the regulations has to sign off on the selection as the Selecting Official. . . .

[Ms. Purnell] had to sign the form as the Selecting Official as a matter of course") *with* DX 24,

Potucek Supp. Aff. II, dated February 1, 2008 at ¶ 5 ("I would like to clarify that I served as the

Selecting Official . . . . I misspoke when I referred to myself as the Recommending Official in my

prior affidavit dated August 8, 2005.").

Second, Potucek has acknowledged that her recommendation/selection was not a final

decision until her supervisor signed the document as the approving official. DX 19, Potucek

November 15, 2007, Dep. at 101-102 (the selecting official's recommendation does not become a

selection until the next higher supervisor signs the selection document). Likewise, Ms. Purnell,

Potucek's supervisor, testified that a final selection was not made until she signed the document

from Ms. Potucek. DX 26, Purnell November 16, 2007, Dep. at 15-16 (selections by her

subordinate managers were not true selections without at least her approval). Therefore, for a

final selection to become effective in the instant matter, both Ms. Potucek and Ms. Purnell were

required to indicate their approvals by signing the appropriate selection document and Merit

Promotion Roster. *See* DX 6, Candidate Selection Recommendation (reflecting both Potucek's

and Purnell's signatures), DX 15, Merit Promotion Roster (reflecting Potucek's signature and

Purnell's initials). Therefore, there are issues of material fact as the selecting official in this

matter.

Defendant's Fact No. 6. Before making a selection, Potucek chose to convene a panel to
interview and evaluate the candidates in compliance with the Conan Consent Decree and the
FDIC Structured Interview - Guidance for Interviewers and Selecting Officials July 2003
("Structured Interview Guidelines") also referred to as ("Agency's Best Business Practices").
See Ex. 13; see also Potucek Dep. II (Ex. 20) at 112-113.

**Plaintiff's Response:** While plaintiff admits that Potucek convened a panel to interview

candidates, there are issues of fact about whether Potucek's actions in this matter were "in

compliance with the FDIC Structured Interview - Guidance for Interviewers and Selecting

Officials July 2003." For instance, the FDIC has established guidance for conducting interviews

during the selection process. DX 13. Selecting officials "*should* participate in the interviews."

DX 13 at 2 (Emphasis added). However, Ms. Potucek did not participate in the interview panel.

DX 20, Potucek November 29, 2007, Dep. at 67 (interview panel consisted of two individuals, Jo

Rita Campbell and Susan Boosinger). Ms. Potucek has offered no reason or explanation that

might even come close to comporting with the exception noted in the FDIC's guidance - it is

reasonable that the selecting official might not participate in interviews "when coordinating large

numbers of vacancies available worldwide." DX 13 at 2.

These issues will be further addressed in plaintiff's responses to defendant's statements of

facts as to which there is no genuine issue, below.

Defendant's Fact No. 7. Ms. Potucek asked Susan Boosinger, an employee outside her chain of command, and her direct report Jo Rita Campbell (who has since retired from the FDIC) to serve as the panel. Potucek Dep. I (Ex. 19) at 44; Campbell Aff. (Ex. 5) at 1; Boosinger Aff. (Ex. 2) at 1.

**Plaintiff's Response:** While plaintiff admits that Potucek asked Ms. Boosinger and Ms.

Campbell to serve as the panel, there are issues of fact about whether Potucek's actions in this

matter were "in compliance with the FDIC Structured Interview - Guidance for Interviewers and

Selecting Officials July 2003." For instance, the FDIC has established guidance for conducting

interviews during the selection process. DX 13. Selecting officials "*should* participate in the

interviews." DX 13 at 2 (Emphasis added). However, Ms. Potucek did not participate in the

interview panel. DX 20, Potucek November 29, 2007, Dep. at 67 (interview panel consisted of

two individuals, Jo Rita Campbell and Susan Boosinger). Ms. Potucek has offered no reason or

explanation that might even come close to comporting with the exception noted in the FDIC's

guidance - it is reasonable that the selecting official might not participate in interviews "when

coordinating large numbers of vacancies available worldwide." DX 13 at 2.

These issues will be further addressed in plaintiff's responses to defendant's statements of

facts as to which there is no genuine issue, below.

Defendant's Fact No. 8. This two-person panel interviewed and evaluated all of the candidates on the roster using the FDIC's structured interview procedures. They then gave their recommendations to Ms. Potucek. Potucek Dep. II (Ex. 20) at 124; Boosinger Dep. (Ex. 3) at 66; Boosinger Aff. (Ex. 2) at 1.

**Plaintiff's Response:** There are issues of fact about the manner that Potucek utilized the

structured interview process, for instance, when she did not serve on the panel and interview

candidates herself, in contravention to the FDIC published guidance. DX 13. Selecting officials

"*should* participate in the interviews." DX 13 at 2 (Emphasis added). However, Ms. Potucek did

not participate in the interview panel. DX 20, Potucek November 29, 2007, Dep. at 67

(interview panel consisted of two individuals, Jo Rita Campbell and Susan Boosinger). Ms.

Potucek has offered no reason or explanation that might even come close to comporting with the

exception noted in the FDIC's guidance - it is reasonable that the selecting official might not

participate in interviews "when coordinating large numbers of vacancies available worldwide."

DX 13 at 2.

There is direct evidence contradicting both Ms. Potucek's and Ms. Boosinger's sworn

testimony that the interview panel "gave their recommendations" to Potucek. Indeed, Ms.

Boosinger, a member of the interview panel testified that the panel did not "make a

recommendation to Lorinda Potucek," but "gave her the ratings." DX 3, Boosinger, November

16, 2007, Dep. at 66, 90-91; *but see* DX 2, Boosinger Aff., dated August 8, 2005 (stating that the

panel made recommendations to Potucek). While defendant has stressed that the interview panel

made "recommendations" to Ms. Potucek at the conclusion of interviews, there is no such rule or

requirement - that interview panels provide recommendations to selecting officials - established

in the published FDIC guidelines for interviewing panels and selecting officials. DX 13 (no

mention that interview panels makes recommendations to the selecting official). No further

documentation has been provided by Ms. Potucek or the FDIC that establishes such a condition,

requirement, or outcome of the interview panel. As such, there is no evidence that, when the

interview panel "allegedly" provided their recommendations to Ms. Potucek, that the interview

panel was complying with established best business practices.  In addition, there is direct

evidence that contradicts defendant's assertions that such recommendations were given to

Potucek.  Therefore, there are genuine issues of material fact regarding defendant's assertions.

Defendant's Fact No. 11.  Following the interviews, each candidate's interview responses were
rated and assigned a cumulative score.  Id.  The panelists then shared their assessments, interview
notes, and rankings of the candidates with Ms. Potucek.  Potucek Supp. Aff. II (Ex. 24) at 1;
Potucek Dep. II (Ex. 20) at 177.

   **Plaintiff's Response:** As an initial matter, plaintiff would note that the characterization

of defendant's alleged undisputed fact # 8 (representing that the interview panel "gave their

recommendations" to Potucek) differs starkly from defendant's characterization in this alleged

undisputed fact.  Indeed, based upon this significant difference in wording between the two

alleged undisputed facts, plaintiff contends that a genuine issue of fact has been established, as

defendant cannot simply assert that two wholly different positions are true.  *See also* Plaintiff's

Response to Defendant's Fact No. 8, above.

Defendant's Fact No. 12.  Based on their evaluations of the responses to the structured interview
questions asked of all candidates, the two interviewers on the structured interview panel
concluded that Roger Little was one of the two top candidates and that plaintiff was not.
Boosinger Aff. (Ex. 2) at 2; Campbell Aff. (Ex. 5) at 1.

   **Plaintiff's Response:** There are issues of fact about the manner that Potucek utilized the

structured interview process, for instance, when she did not serve on the panel and interview

candidates herself, in contravention to the FDIC published guidance.  DX 13.  Selecting officials

"*should* participate in the interviews." DX 13 at 2 (Emphasis added).  However, Ms. Potucek did

not participate in the interview panel.  DX 20, Potucek November 29, 2007, Dep. at 67

(interview panel consisted of two individuals, Jo Rita Campbell and Susan Boosinger).  Ms.

Potucek has offered no reason or explanation that might even come close to comporting with the

exception noted in the FDIC's guidance - it is reasonable that the selecting official might not participate in interviews "when coordinating large numbers of vacancies available worldwide." DX 13 at 2.

Moreover, as defendant is attempting to buttress its argument that the interview panel made recommendations to Potucek, there is direct evidence contradicting both Ms. Potucek's and Ms. Boosinger's sworn testimony that the interview panel "gave their recommendations" to Potucek. Indeed, Ms. Boosinger, a member of the interview panel testified that the panel did not "make a recommendation to Lorinda Potucek," but "gave her the ratings." DX 3, Boosinger, November 16, 2007, Dep. at 66, 90-91; *but see* DX 2, Boosinger Aff., dated August 8, 2005 (stating that the panel made recommendations to Potucek). While defendant has stressed that the interview panel made "recommendations" to Ms. Potucek at the conclusion of interviews, there is no such rule or requirement - that interview panels provide recommendations to selecting officials - established in the published FDIC guidelines for interviewing panels and selecting officials. DX 13 (no mention that interview panels makes recommendations to the selecting official). No further documentation has been provided by Ms. Potucek or the FDIC that establishes such a condition, requirement, or outcome of the interview panel. As such, there is no evidence that, when the interview panel "allegedly" provided their recommendations to Ms. Potucek, that the interview panel was complying with established best business practices. In addition, there is direct evidence that contradicts defendant's assertions that such recommendations were given to Potucek. Therefore, there are genuine issues of material fact regarding defendant's assertions.

<u>Defendant's Fact No. 13.</u> The Panel recommended two individuals, Roger Little and Paula

Foreman, as the top contenders, whom they considered "tied for first place."  Potucek Dep. II (Ex. 20) at 124.

>    **Plaintiff's Response:**  There are issues of fact about the manner that Potucek utilized the structured interview process, for instance, when she did not serve on the panel and interview candidates herself, in contravention to the FDIC published guidance.  DX 13.  Selecting officials "*should* participate in the interviews." DX 13 at 2 (Emphasis added).  However, Ms. Potucek did not participate in the interview panel.  DX 20, Potucek November 29, 2007, Dep. at 67 (interview panel consisted of two individuals, Jo Rita Campbell and Susan Boosinger).  Ms. Potucek has offered no reason or explanation that might even come close to comporting with the exception noted in the FDIC's guidance - it is reasonable that the selecting official might not participate in interviews "when coordinating large numbers of vacancies available worldwide." DX 13 at 2.

>    Moreover, as defendant is attempting to buttress its argument that the interview panel made recommendations to Potucek, there is direct evidence contradicting both Ms. Potucek's and Ms. Boosinger's sworn testimony that the interview panel "gave their recommendations" to Potucek.  Indeed, Ms. Boosinger, a member of the interview panel testified that the panel did not "make a recommendation to Lorinda Potucek," but "gave her the ratings."  DX 3, Boosinger, November 16, 2007, Dep. at 66, 90-91; *but see* DX 2, Boosinger Aff., dated August 8, 2005 (stating that the panel made recommendations to Potucek).  While defendant has stressed that the interview panel made "recommendations" to Ms. Potucek at the conclusion of interviews, there is no such rule or requirement - that interview panels provide recommendations to selecting officials - established in the published FDIC guidelines for interviewing panels and selecting

officials.  DX 13 (no mention that interview panels makes recommendations to the selecting

official).  No further documentation has been provided by Ms. Potucek or the FDIC that

establishes such a condition, requirement, or outcome of the interview panel.  As such, there is

no evidence that, when the interview panel "allegedly" provided their recommendations to Ms.

Potucek, that the interview panel was complying with established best business practices.  In

addition, there is direct evidence that contradicts defendant's assertions that such

recommendations were given to Potucek.  Therefore, there are genuine issues of material fact

regarding defendant's assertions.

Defendant's Fact No. 14.  Ultimately, Ms. Potucek selected Mr. Little for the position at the CG-
7 level.  Boosinger Aff. (Ex. 2) at 2; Candidate Selection Recommendation (Ex. 6); Merit
Promotion Roster (Ex. 15).

Plaintiff's Response: Admitted, to the extent that defendant has accurately represented

that Mr. Little's name appeared on the Candidate Selection Recommendation and Merit

Promotion Roster.  However, for the purposes of the instant motion for summary judgment,

plaintiff asserts that there are sufficient issues of material fact that Chappell-Johnson was the

only eligible and qualified candidate for selection to all three grades (CG-7/9/11) for which the

position was advertised.  Indeed, Ms. Potucek testified that Ms. Chappell-Johnson's statement in

her August 5, 2005, Affidavit (at page 2) was true that "[Chappell-Johnson] was better qualified

for the [] position than [the selectee] because [Chappell-Johnson] previously served in the

announced position at the CG-11 level for about three to four years.  Indeed, [Chappell-Johnson]

had performed all of the functions that were required by way of the vacancy announcement.  The

selectee had not."  *See* DX 20, Potucek November 29, 2007 Dep. at 173-174.  There are

sufficient facts that would allow a finder of fact to reject defendant's alleged legitimate, non-

discriminatory reason for failing to select plaintiff for the vacant Human Resources Specialist

(Information Systems and Compensation) position.  *See also* Plaintiff's Response to Defendant's

Facts No. 6, 8, 11, 12, and 13, above.

Defendant's Fact No. 15.  In making the selection, Ms. Potucek relied on the evaluations and
recommendations of the interviewers, Ms. Boosinger and Ms. Campbell, that Mr. Little and Ms.
Foreman were the two top candidates.  Potucek Supp. Aff. (Ex. 23) at 1; Potucek Dep. II (Ex. 20)
at 177.

   **Plaintiff's Response:**  There are issues of fact regarding Potucek's statements as to what

she relied upon in making a decision.  Ms. Potucek deviated from the FDIC's strict guidelines 1)

when she did not participate in the interview panel without offering a cogent reason, despite

FDIC guidance, DX 13 at 2 (selecting officials *should* participate in the interviews") (emphasis

added); and 2) when she relied upon her personal experience working with Roger Little, *compare*

DX 13 at 3 ("The Selecting Official should rely on the interview documentation, any discussions

with other members of the interview panel and the application materials submitted by the

candidate to make a final decision.") *with* DX 20, Potucek November 29, 2007, Dep. at 169

(Potucek "relied on the structured interview panel results, [her] review of [Little's] application,

*and what [she] knew of [Little's] abilities working for [Potucek]"*) (emphasis added).  Indeed,

Ms. Potucek has represented that she specifically followed the "best business practices

guidelines." DX 20, Potucek November 29, 2007 Dep. at 130; *but see* DX 20, Potucek

November 29, 2007 Dep. at 133 (Potucek testifying that her "decision [] was only based on what

the structured interview panel recommended to [her]")  However, in actuality, Ms. Potucek

deviated significantly from the established procedures for interviewing and/or selecting a

candidate to fill a vacancy.  *See also* Plaintiff's Response to Defendant's Facts No. 6, 8, 11, 12,

and 13, above.

In addition, there are issues of fact whether a selecting official's reliance on subjective factors, such as communications skills and/or performance during an interview, in the selection process is inherently suspect and may infer discrimination.

Defendant's Fact No. 16.  After the panel recommended Roger Little and Paula Foreman as the two top candidates for further consideration, Ms. Potucek also took into account her personal knowledge regarding Mr. Little and her favorable impressions regarding the work that he had demonstrated when he had previously worked under her supervision.  See Potucek Aff. (Ex. 18) at 2; Potucek Dep. II (Ex. 20) at 123, 146.

**Plaintiff's Response:**  There are issues of fact regarding Potucek's statements as to what she relied upon in making a decision.  Ms. Potucek deviated from the FDIC's strict guidelines 1) when she did not participate in the interview panel without offering a cogent reason, despite FDIC guidance, DX 13 at 2 (selecting officials *should* participate in the interviews") (emphasis added); and 2) when she relied upon her personal experience working with Roger Little, *compare* DX 13 at 3 ("The Selecting Official should rely on the interview documentation, any discussions with other members of the interview panel and the application materials submitted by the candidate to make a final decision.") *with* DX 20, Potucek November 29, 2007, Dep. at 169 (Potucek "relied on the structured interview panel results, [her] review of [Little's] application, *and what [she] knew of [Little's] abilities working for [Potucek]*") (emphasis added).  Indeed, Ms. Potucek has represented that she specifically followed the "best business practices guidelines." DX 20, Potucek November 29, 2007 Dep. at 130; *but see* DX 20, Potucek November 29, 2007 Dep. at 133 (Potucek testifying that her "decision [] was only based on what the structured interview panel recommended to [her]")  However, in actuality, Ms. Potucek deviated significantly from the established procedures for interviewing and/or selecting a

candidate to fill a vacancy. *See also* Plaintiff's Response to Defendant's Facts No. 6, 8, 11, 12,

13, and 15, above.

Defendant's Fact No. 21. The selecting official, Ms. Potucek, had no knowledge of Plaintiff's
prior EEO complaints during the selection decision at issue. Potucek Aff. (Ex. 18) at 1.

**Plaintiff's Response:** There are genuine issues of material fact that require a jury to

resolve. "Credibility determinations, the weighing of evidence, and the drawing of inferences

from the facts are jury functions, not those of the judge." *Reeves*, 530 U.S. at 150-51. At

summary judgment, the trial court "must disregard evidence the jury is not required to believe"

and credit evidence of the movant that is uncontradicted and unimpeached only "to the extent

that the evidence comes from disinterested witnesses." *Id.* Only a jury can resolve the disputed

issues of fact raised by this record.

Here, Ms. Potucek claims that she had no knowledge of Ms. Chappell-Johnson's prior

EEO activity. *See* DX 18, Potucek Aff., dated August 8, 2005 at 1 ("I personally had no

knowledge of [Chappell-Johnson's] prior EEO Complaint activity."); *see also* DX 19 (Potucek

November 15, 2007, Dep.) at 73-74 (no conversation with Ms. Chappell-Johnson prior to August

2004 regarding Chappell-Johnson filing EEO formal complaints with FDIC). However, Ms.

Potucek testified that she was aware that her superior went to the Legal Department regarding an

EEO complaint filed by Chappell-Johnson. DX 19 (Potucek November 15, 2007, Dep.) at 74.

Moreover, Ms. Chappell-Johnson testified that she discussed her prior EEO activity with Ms.

Potucek. DX 9, Chappell-Johnson's Dep. at 71-72 (conversations with Potucek about her EEO

complaints); *see also*, DX 7 (Chappell-Johnson Affidavit, dated August 5, 2005) at 2 (same). A

reasonable jury could chose to believe Ms. Chappell-Johnson and conclude that Ms. Potucek is

lying to cover up her discriminatory and/or retaliatory motives for rejecting Ms. Chappell-Johnson's application.

Respectfully submitted,

_____/s/_____
David H. Shapiro, D.C. Bar # 961326
James E. Simpson, D.C. Bar # 482870
Swick & Shapiro, P.C.
1225 Eye Street, N.W.
Suite 1290
Washington, DC 20005
(202) 842-0300
Fax (202) 842-1418

Attorneys for Plaintiff